IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TRELLIAN PTY, LTD.,

                Plaintiff,

-v-

                CIVIL ACTION NO.: 19 Civ. 5939 (JPC) (SLC)

adMARKETPLACE, INC.,

                **DISCOVERY ORDER**

                Defendant.

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is the motion of Defendant-Counterclaimant adMarketplace, Inc. ("AMP") to compel non-party Resilion, LLC ("Resilion") to produce unredacted versions of documents Resilion produced in response to AMP's Subpoena dated May 28, 2020 (the "Subpoena"). (ECF No. 64 ("AMP's Motion")). Resilion opposes AMP's Motion, and cross-moves for a protective order as well as its attorneys' fees and costs incurred in opposing AMP's Motion. (ECF No. 65 ("Resilion's Cross-Motion")). For the reasons set forth below, AMP's Motion and Resilion's Cross-Motion are each GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Background

The dispute in this action involves a "segment of the digital advertising market that trades in internet 'search traffic,' connecting major brand advertisers to consumers through their internet search activity." (ECF No. 17 at 1). Plaintiff Trellian Pty, Ltd. ("Trellian") "operates a 'Direct Search Network' that feeds domain redirect traffic to participating advertisers," such as AMP, "who bid, in real time for a 'click through' from direct type-in users." (Id.) The successful

bidder responds "via the Trellian network to the click request by delivering a paid advertisement from [the bidder's] merchant or brand clients." (Id.) "One of the domain names at issue in this case is 'macy.com.' which inadvertently receives address-bar type-in traffic intended for the web address of the retailer Macy's, Inc. ('macys.com')." (Id.) The macy.com domain "is [] hosted on a platform of domains managed by a Trellian affiliate." (Id.)

Beginning in 2013, AMP had an account with Trellian, through which AMP bid for the right to purchase macy.com redirect traffic using budget Macy's Inc. allocated to AMP (AMP also bid on other redirect traffic for other clients). (ECF No. 17 at 1). AMP agreed to pay Trellian "redirect fees" and "Unique Visitor Fees" that comprised a winning bid, and Trellian invoiced AMP for these amounts on a monthly basis. (Id. at 2). AMP regularly paid Trellian's invoices through November 2018; AMP paid the November 2018 invoice in part, and did not pay Trellian's invoices for December 2018, January 2019, and February 2019. (Id.) In February 2019, Trellian learned that Macy's, Inc. had selected Resilion as the exclusive bidder for its brand traffic, such that Macy's Inc. would no longer allocate budget to other bidders like AMP to purchase traffic, and thus Trellian pointed all macy.com redirect traffic to Resilion only. (Id. at 3).

Trellian asserts against AMP claims for breach of contract, account stated, and unjust enrichment, seeking to recover $747,711.57, plus interest and attorneys' fees. (ECF Nos. 17 at 2; 1 ¶¶ 11–14). AMP asserts several affirmative defenses, and, in addition, counterclaims against Trellian for breach of contract, misappropriation of confidential information, tortious interference with business relations, and breach of the duty of good faith and fair dealing. (ECF No. 14). AMP bases its breach of contract claims on Trellian's alleged breach of the confidentiality and non-solicitation provisions of the parties' Listing Distribution Agreement ("LDA"). (Id. ¶¶ 24-

41; ECF No. 17 at 2). Specifically, AMP alleges that Trellian improperly disclosed confidential information to Resilion, AMP's competitor, resulting in "Trellian granting Resilion an exclusive relationship for access to the macy.com domain" that allowed Trellian and Resilion to solicit business from Macy's, Inc. "that would have otherwise gone to [AMP]." (ECF No. 14 ¶ 21). AMP alleges that Trellian "conspired with Resilion," (id. ¶ 30), but AMP does not assert any claims against Resilion. (See id.)

### B. Procedural Background

On June 25, 2019, Trellian filed its Complaint (ECF No. 1), and on August 23, 2019, AMP filed its Answer and Counterclaims. (ECF No. 14). The parties proceeded to discovery, as part of which AMP served the Subpoena to Resilion. (ECF No. 64 at 1). The Subpoena sought Resilion's documents "related to the macy.com domain, communications and contracts with Macy's and Trellian, and Resilion's internal communications and strategy documents related to its Macy's business." (ECF No. 65 at 2). Among its objections to the Subpoena, Resilion asserted that AMP "sought confidential and critically sensitive business information and that disclosure could cause 'substantial economic harm to Resilion's competitive position.'" (Id.) At Resilion's request, the parties modified the Stipulation and Protective Order (the "Protective Order") to include an "Attorneys' Eyes Only" ("AEO") category. (ECF Nos. 50–51, 64 at 1).

On September 25, 2020, Resilion produced 428 documents, the vast majority of which contained redactions ("Resilion's Production"). (ECF No. 64 at 1–2). AMP objected to Resilion's redactions and, following a meet-and-confer, Resilion agreed to remove some of the redactions and reproduce the documents ("Resilion's Amended Production"). (Id. at 2). In particular, Resilion's Amended Production "removed all redactions from its Trellian communications

through April 30, 2019[.]" (ECF No. 65 at 2). Resilion's Amended Production includes 428 documents, 105 of which contain no redactions, and 323 of which contain some redactions. (Id.; ECF No. 64 at 2).

AMP continued to object to the redactions in Resilion's Amended Production, and on December 21, 2020, reiterated its demand that Resilion remove the redactions altogether. (ECF No. 64 at 2). On December 30, 2020, the parties participated in a meet-and-confer discussion. (Id.) Unable to reach agreement, on January 5, 2021, AMP filed its Motion, and on January 7, 2021, Resilion's Cross-Motion was filed. (ECF Nos. 64, 65). The parties completed letter-briefing (ECF Nos. 67, 70). On January 11, 2021, the Court scheduled a discovery conference, and ordered AMP and Trellian to meet-and-confer and submit for the Court's in camera review a sample of twenty documents containing the disputed redactions (the "Sample Documents"). (ECF No. 68). On January 13, 2021, AMP and Trellian submitted the Sample Documents for the Court's review, (ECF Nos. 71, 71-1 – 71-20), and on January 15, 2021, the Court held a discovery conference during which it heard argument from AMP and Trellian (the "January 15 Conference"). (ECF No. 74).

## II. DISCUSSION

### A. Legal Standards

The Federal Rules of Civil Procedure establish the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Rule 26 gives a district court 'broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on 'just terms.'" Coty v. Cosmopolitan Cosms., Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018)). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Rep. of Arg., 695 F3d 201, 207 (2d Cir. 2012).

A subpoena seeking documents from a non-party under Federal Rule of Civil Procedure 45 is "subject to the relevance requirement of Rule 26(b)(1)." Homeward Residential Inc. v. Sand Canyon Corp., Nos. 12 Civ. 5067 & 12 Civ. 7319 (JFK) (JLC), 2017 WL 4676806, at *18 (S.D.N.Y. Oct. 17, 2017) (quoting In re Refco Secs. Litig., 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011). A court may, "for good cause, issue an order to protect a party or person from undue burden." Id. (citing Fed. R. Civ. P. 26(c)(1)).  In addition, the party who serves a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena[,]" and if a timely motion is made, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1)–(3); see Homeward Res., Inc., 2017 WL 4676806, at *18. Courts thus afford "special weight to the burden on non-parties of producing documents to parties involved in litigation," Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005), and must be "particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty." Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911 (HB) (HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).

In general, "[t]he weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'" Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd., 327 F.R.D. 52, (S.D.N.Y. 2018) (quoting Cyris Jewels v. Casner, No. 12-CV-1895 (KAM) (SLT), 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016)). "Redactions are normally impermissible unless based on a legal privilege." Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020). "Moreover, redactions are particularly impermissible where a confidentiality stipulation and order is in place." Id. Still, a court may permit redactions on "a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Howell v. City of New York, No. 06-CV-6347 (ERK) (VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (quoting Fed. R. Civ. P. 26(c)(1)). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" Dukes v. NYCERS, 331 F.R.D. 464, 473 (S.D.N.Y. 2019) (quoting Rep. of Turk. v. Christie's, Inc., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018)). The burden to show good cause falls on the party seeking a protective order. See id. (citing Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011)).

B. **Application**

1. **The Parties' arguments**

AMP contends that Resilion's redactions fall into four categories: "(1) entire documents; (2) large sections of communication chains obscuring their meaning; (3) percentage, price, and other numerical data metrics (including charts seeming to detail bid performance); and (4)

6

particular words, such that the meaning of the document has become unintelligible." (ECF No. 64 at 2). AMP believes all of the redactions conceal material that "is highly relevant to this case," in particular, AMP's alleged damages. (Id.) AMP rejects Resilion's assertion of burden to un-redact the documents as "spurious," and contends that the AEO provision in the Protective Order eliminates any concern about "prying eyes" viewing Resilion's commercially sensitive information. (ECF No. 67 at 2, 3).

Resilion describes its redactions as "'customer lists, pricing structures, specific price quotations, pricing-derivative information, and revenue projections for former, current, and potential future customers' including 'customer's total spend, "clicks," number of conversions, costs per click, conversion rates, click through rates, customer assets (keywords, tracking URLs, and the like), and advertising-specific performance metrics, that could reasonably include return on account spend or costs per action[,]'" which it asserts is language AMP has used in a separate action in New York State Supreme Court to "define its own proprietary, confidential, and commercially sensitive information." (ECF No. 65 at 1–2 (quoting ECF No. 65-1 ¶¶ 16–21)). Resilion argues that AMP is a "direct competitor," and that the redactions appropriately protect Resilion's "proprietary and commercially sensitive information" from AMP's improper use of the Subpoena "to interfere with Resilion's business and obtain Resilion's confidential business information." (Id. at 3). Resilion contends that AMP has not shown how "Resilion's margin and financial information, business metrics and other critical data" are relevant to AMP's claims against Trellian, and therefore, AMP's demands for this information "are burdensome, not proportional, and improper." (Id.) Finally, Resilion contends that it has demonstrated good cause in the form of special circumstances that justify the redactions, including the facts that Resilion

and AMP are direct competitors in "a highly competitive industry," the redacted information is commercially sensitive, "AMP's counsel has represented AMP repeatedly," and AMP is in communication with the owner of the macy.com domain.  (ECF No. 70 at 2–3).

   **2. Resilion has demonstrated good cause for most of its redactions.**

The Court has reviewed each of the Sample Documents and concludes that Resilion has shown good cause for its redactions, with one exception noted below.  First, Resilion has produced all of its communications with Trellian without redactions, and the redactions in the Sample Documents are narrowly tailored to shield only "commercially sensitive" information such as Resilion's other clients' names, actual and projected budget figures, performance metrics, and other business performed for Macy's, Inc. (see ECF No. 70 at 1–2), information which, in the Court's view, AMP has not shown is not relevant to the claims between it and Trellian.  See LPD N.Y., LLC v. Adidas Amer., Inc., No. 15-CV-6360 (MKB), 2020 WL 6784179, at *1 (E.D.N.Y. Nov. 17, 2020) (holding that "competitively sensitive portions" of licensing agreements that were "not relevant to the issues in" the case could be redacted).  The Court is not persuaded by AMP's argument during the January 15 Conference that Resilion's budget figures and performance metrics are relevant to allow AMP's expert to demonstrate AMP's damages from Trellian's alleged breaches of the LDA.  (ECF No. 74 at 7:22–9:23).  AMP's counsel conceded instead that what its expert needs for AMP's damages calculations is "information about budgets from Macy's side, [and] . . . information about clicks from the Trellian side," but did not articulate why AMP could not get that information from Macy's and Trellian, or how any information about budgets or clicks from Resilion was necessary for those calculations.  (Id.)  Accordingly, the Court

finds that the redacted information as it appears in the Sample Documents is not relevant to the issues in this case.

Second, it is undisputed that AMP and Resilion are not only competitors generally, but have been in competition with respect to the macy.com traffic that is the subject of this action; indeed, AMP goes so far as to accuse Resilion of conspiring with Trellian to steal that business away from AMP.  (ECF Nos. 14 ¶ 30; 17 at 2–3).  The direct, ongoing competition between AMP and Resilion requires the exercise of additional caution with respect to Resilion's commercially sensitive information.  See Solow v. Conseco Inc., No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *4–5 (S.D.N.Y. Jan. 18, 2008) (quashing subpoena that sought financial information about non-party competitor who owned building that plaintiff sought to purchase).

Third, balancing the lack of relevance of the redacted information against the risk to Resilion, a non-party, of disclosing its highly sensitive commercial information to its direct competitor demonstrates that requiring production of the redacted information would impose an undue burden on Resilion.  See Homeward Residential Inc., 2017 WL 4676806, at *18.

Fourth, given the Court's finding that the redacted information is not relevant, simply telling Resilion to apply the AEO designation in the Protective Order does not eliminate the risk of harm from disclosure of its commercially sensitive information.  See Grand River Enter. Six Nations, Ltd. v. King, No. 02 Civ. 5068 (JFK), 2009 WL 222160, at *3 (S.D.N.Y. Jan. 30, 2009) (noting that "'it is understandable that [the producing party] does not even want to risk disclosure of [sensitive] information, despite the existence of a protective order'" and declining to require disclosure to experts and attorneys) (internal citation omitted).  The redacted information is not relevant, so AMP is not entitled to it under any designation.  See LPD N.Y., LLC, 2020 WL 6784179,

at *1 (declining to compel production of redacted information that was "not relevant to the issues" in the litigation).

Finally, AMP's contention that the Court "essentially decided" AMP's Motion in Coventry Capital, 2020 WL 7383940, is misplaced. (ECF No. 74 at 5:4-19). Coventry Capital did not involve a subpoena under Rule 45, and thus the question of "undue burden" on a non-party was not at issue. In addition, the defendant from whom the plaintiff sought the redacted information was not a competitor, and the defendant otherwise "cite[d] no persuasive grounds to depart from the general rule prohibiting relevance redactions." Coventry Capital, 2020 WL 7383940, at *9. In contrast, the Court's review of the redacted information in the Sample Documents here shows that that information is not relevant, which, coupled with the highly competitive relationship existing between AMP and Resilion, provides the "persuasive grounds" that were absent in Coventry Capital. Id.[1]

The exception the Court notes is with respect to spreadsheets that appear as Sample Documents No. 4 and 15 and any other similar spreadsheets in Resilion's Amended Production. During the January 15 Conference, the Court pointed out that in Sample Document No. 2, another spreadsheet, Resilion had disclosed column headings and redacted only the body of the spreadsheet, while Resilion had redacted the entirety of Sample Documents No. 4 and 15, and asked whether Resilion could unredact the column headings in those documents as well. (ECF No. 74 at 18:25–20:7). Resilion agreed that it could do so, with the exception of the names of its proprietary advertising campaigns. (Id. at 20:8–21:8). Accordingly, Resilion is directed to

---

[1] Plaintiff Coventry Capital US LLC objected to unrelated rulings in the cited Coventry Capital Report and Recommendation. (See 17 Civ. 7417, ECF No. 263). The District Court has not yet ruled on that objection.

<u>unredact</u> the column headings in Sample Documents No. 4 and 15, and any other spreadsheets in its Amended Production, with the exception of the names of proprietary advertising campaigns, for which Resilion may substitute an abbreviation, such as "Campaign A," or other comparable generic label.

3. **<u>Resilion's request for attorneys' fees and costs is denied.</u>**

Resilion asks that it be granted its attorneys' fees and costs associated with AMP's Motion and Resilion's Cross-Motion, but provides neither legal authority nor any substantial argument in support of that request. (ECF Nos. 65 at 3; 70 at 1, 3). Accordingly, the Court in its discretion DENIES Resilion's request for an award of attorneys' fees and costs. <u>See</u> <u>New Falls Corp. v. Soni</u>, No. 16-CV-6805 (ADS) (AKT), 2018 WL 3321429, at *6 (E.D.N.Y. July 5, 2018) (denying request for attorneys' fees and costs associated with discovery motion as an exercise of the court's discretion).

### III. <u>CONCLUSION</u>

For the reasons set forth above, AMP's Motion is GRANTED IN PART, to the extent that Resilion is ORDERED to re-produce Sample Documents No. 4 and 15 and other spreadsheets showing the column headings (with generic campaign names as necessary), and is otherwise DENIED. Further, Resilion's Cross-Motion is GRANTED IN PART to the extent that it is not required to reproduce unredacted versions of documents <u>other</u> <u>than</u> Sample Documents No. 4 and 15 and other spreadsheets as described above, and is otherwise DENIED.

The Clerk of Court is respectfully directed to close ECF No. 64.

Dated:     New York, New York
           February 3, 2021

SO ORDERED

_____
**SARAH L. CAVE**
**United States Magistrate Judge**